IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–02287–MDB

A.P.,

    Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of the Social Security Administration,

    Defendant.

## ORDER

Plaintiff A.P.[1] ["Plaintiff"] brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Martin O'Malley ["Commissioner"], denying her application for Disability Insurance Benefits. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff replied. (["Opening Brief"], Doc. No. 11; ["Response"], Doc. No. 12; ["Reply"], Doc. No. 13.) The Commissioner has also filed the Administrative Record. (["AR"], Doc. No. 10.) After carefully analyzing the briefs, the Administrative Record, and relevant law, the Court respectfully **REVERSES** the Commissioner's final decision and **REMANDS** this case for proceedings consistent with this Order.

## BACKGROUND

---

[1] Pursuant to Local Rule D.C.COLO.LAPR 5.2(b), Plaintiff A.P. is identified by her initials only.

Plaintiff, born October 18, 1974, alleges she became disabled on August 1, 2020, when she was 45 years old, due to physical and mental impairments.[2] (Doc. No. 11 at 1; AR 53, 101–26.) Given her various ailments, Plaintiff filed a Title II application for a period of disability and disability insurance benefits on May 4, 2021, and an application for supplemental security income on April 22, 2021. (Doc. No. 11 at 1 (citing AR 104; 256–65).)

Relevant to the instant appeal, on November 10, 2021, Plaintiff presented to Russell Thye, Ph.D., for a psychological consultative examination. (AR 725–31.) According to Dr. Thye, Plaintiff was low energy but cooperative and presented with appropriate hygiene, dress, and grooming. (AR 725.) Plaintiff was tearful at times. (AR 726.) She was driven to the appointment by her husband because she "blacked out behind the wheel earlier this year and has not driven since." (AR 725.) Plaintiff presented a driver's "Instructional Permit" because her driver's license was expired due to a "mix-up on dates." (*Id.*)

During the exam, Plaintiff reported living with "[b]ipolar, anxiety, social anxiety, [and] PTSD." (*Id.*) According to Plaintiff, her depression resulted in a "loss of interest, pleasure, and motivation," and she "reported difficulty thinking and concentrating and said her weight and appetite fluctuate." (AR 727.) Plaintiff said she often felt agitated and anxious, sleeps poorly, and struggles with "feelings of worthlessness and excessive guilt, hopelessness, and helplessness." (*Id.*) As for her bipolar disorder, Plaintiff's husband reported that Plaintiff went through manic episodes "approximately five times in a three-month period." (*Id.*) These episodes dropped her sleep "to about five hours a night vs. about 12," resulted in more crafting with a neighbor friend,

---

[2] Plaintiff does not appeal the ALJ's findings as to her physical impairments. (*See* Doc. No. 11.) Accordingly, the Court will not address Plaintiff's physical impairments in this order.

2

and caused irritability, talkativeness, impulsiveness, and recklessness with money. (*Id.*) As for her anxiety and PTSD, Plaintiff reported severe mental, physical, and sexual abuse from her childhood and previous relationships. (AR 728.) She said she often feels "restless and on edge, is easily fatigued and has difficulty concentrating." (*Id.*) She also reported "routine nightmares, flashbacks, and distressing memories to prior traumatic events," which she had previously medicated with drugs and alcohol. (*Id.*) Dr. Thye reported, "[s]he was clearly triggered by our discussion of prior trauma and had to stop to calm herself several times. She was upset and tearful and concerned about having a panic attack." (*Id.*)

As for her daily routine, Plaintiff reported that she usually "sit[ting] in front of the TV and zon[ing] out" during the day but said she tries to "sweep and mop, do the dishes, dust and vacuum." (AR 725.) However, Plaintiff said those activities "take[ ] me forever" due to lack of motivation and "I usually only do half of it." (*Id.*) She said she takes care of her dog. (*Id.*) Plaintiff also reported requiring her husband's help "grocery shopping because I have panic attacks with too many people around." (*Id.*) Plaintiff said she could make simple meals, and did crafts and made blankets with her neighbor. (AR 725–26.) She had last worked at LaQuinta Inn for two days in their laundry room earlier in 2021, but was fired for being too slow. (AR at 726.) Plaintiff said, "she used to drink heavily and no longer drinks. She last drank a 12 oz. rum and coke and two shots of tequila about one month ago." (*Id.*) She reported "attempting suicide three months ago by taking a half bottle of her sleeping pills." (AR 727.)

Dr. Thye conducted a mental status examination of Plaintiff finding:

- Plaintiff appropriately oriented to person and place with appropriate eye contact and behavior, and quiet speech in normal tone, quality, and pace, and able to identify the dates and day of the week.

3

- Plaintiff was often "upset, anxious, and tearful as she talked about her experiences with affect and facial expressions that were consistent with her report."

- Plaintiff was able to recall "2/5 words immediately, and 2/5 words at five minutes (became tearful)."[3]

- Plaintiff reported being prone to hallucinations.[4]

- Plaintiff was able to complete "serial 7s backward from 50 in 90 seconds ... with four errors and ... serial 3s backward from 20 in 44 seconds ... with two errors.

- Plaintiff was able to spell "the word WORLD correctly both forward and backward and listed the months of the year in reverse in 98 seconds."

- Plaintiff's "processing speed was delayed on 3/5 tasks."

- Plaintiff "misidentified what direction the sun rises and sets, and the location of Brazil. She correctly identified the number of weeks in a year, the number of quarters in $2.75, and the names of the current US president and the two presidents before him."

- Plaintiff "abstracted similarities between an apple and banana, between north and west and between a table and chair. She did not know how to interpret two common proverbs. By this time in the interview, [Plaintiff] was having difficulty staying engaged and awake. She startled awake two or three times and seemed to have become exhausted by our discussion of prior traumatic events."

---

[3] Dr. Thye noted Plaintiff "reported mild problems with memory in daily functioning" and "estimated 15 potential concussions from domestic violence in her first marriage." Plaintiff also reported "potential post-concussive symptoms including increased headaches and problems with concentration and memory, sleep patterns, and mood .... tinnitus, and increased problems with balance, dizziness, and nausea." (AR 729.)

[4] According to Dr. Thye, Plaintiff "reported hearing [her husband's] voice and her sister's voice when neither said anything. 'I have done that at the doctor's office and with friends.' [Plaintiff] said as early as age six, she had visual hallucinations 'of different people of different eras' and those experiences have continued to the present. [Plaintiff] also experiences paranoid delusions. 'She hears a car door slam every 10 seconds and she runs to the door.'" (AR 729.)

- "When asked what she would do if she found an envelope in the street that was sealed, addressed and stamped, [Plaintiff] replied appropriately. When asked what she would do if she smelled smoke in a crowded theater, she said she would leave. She provided the correct change for $10.00 - $6.50. [Plaintiff] seemed capable of good judgment and would likely make good decisions most of the time when faced with circumstances common to daily life. [Plaintiff] is prone to poor decision-making during manic episodes and during panic attacks."

(AR 728–29.)

Dr. Thye diagnosed Plaintiff with chronic PTSD, severe bipolar I disorder, and moderate alcohol use disorder in early full remission. (AR 729.) He concluded that with "continued engagement in treatment, [Plaintiff] would likely realize a reduction in symptoms over time, with increased coping skills and level of functioning," but she "will likely maintain a baseline of symptoms due to the severity of her mental illness and prior traumatic experiences." (AR 730.) Dr. Thye also made the following estimates of Plaintiff's psychiatric symptoms on her functioning:

> [Plaintiff'] ability to accept instruction and constructive criticism and respond appropriately to co-workers and the public in a working setting is markedly impaired due to panic attacks, emotional upset, dissociative episodes, psychotic symptoms, low energy and pace, and frequent bipolar mood swings. It is unlikely she could work any position without accommodations. [Plaintiff's] ability to maintain attention to and persist in simple work-related tasks is moderately to markedly impaired. She completed 3/5 simple concentration tasks correctly and her processing speed was markedly delayed on 3/5 concentration tasks. She took 90 seconds to complete serial sevens with four errors and took 98 seconds to list the months in reverse. [Plaintiff's] ability to understand, recall and remember tasks is moderately to markedly impaired. [Plaintiff] recalled 2/5 words immediately and 2/5 words at 5 minutes. She recalled 3/5 general fund of knowledge items. She reported mild problems with memory in daily functioning but is likely underestimating problems with memory.
>
> [Plaintiff's] ability to sustain acceptable attendance and work without interruptions resulting from her psychiatric condition is markedly impaired due to deficits in concentration, processing, and memory. Her energy is low due to post-trauma anxiety, possible dissociative episodes, and the effects of her medications.

5

> [Plaintiff's] ability to adapt to new situations is markedly impaired due to identified deficits and multiple MSE errors. [Plaintiff's] ability to follow short, simple instructions or directions is markedly impaired due to anxiety, panic attacks, bipolar mood swings, and concentration and processing deficits. [Plaintiff's] ability to understand and carry out more detailed and complex instructions is markedly impaired for above reasons.

(AR 730.)

The Social Security Administration initially denied Plaintiff's applications on November 29, 2021. (AR 53–63, 65–75.) Her applications were denied on reconsideration on March 4, 2022. (AR 77–87, 88–98.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Kathleen Laub on March 16, 2023. (AR 22–52; 173–75.)

On April 21, 202, the ALJ issued a Notice of Decision – Unfavorable. (AR 101–26.) The ALJ concluded the following:

1. Plaintiff had not engaged in substantial gainful activity since August 1, 2020. (AR 107)

2. Plaintiff had the severe impairments of bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, degenerative disc disease of the cervical spine, osteoarthritis of the right shoulder, and alcohol use disorder. (*Id.*)

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (AR 108.)

4. Plaintiff had the residual function capacity ("RFC") to perform light work, subject to the limitation that she can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the right dominant upper extremity. She can tolerate no exposure to hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor). She can understand, remember, and carry out simple instructions and use judgement to make simple work-related decisions. She can tolerate occasional interactions with supervisors. She can tolerate occasional interactions with co-workers but should not have to engage in any teamwork or collaboration with them. She can tolerate occasional interactions with the public. She can adapt to occasional changes in a routine work setting. She can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline. [She] must avoid work environments with public crowds such as restaurants, theaters, and retail stores. (AR 109–18.)

5. Plaintiff is capable of performing past relevant work as a circuit assembler.[5] (AR 119.)

Plaintiff requested that the Appeals Council review of the ALJ's decision, which the Appeals Council denied on July 12, 2023 (AR 1–7), rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on September 7, 2023. (Doc. No. 1.) Because this matter is ripe for consideration, the Court considers the parties' arguments below.

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992)

---

[5] The ALJ also found "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR 120.)

(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff brings one argument on appeal: the ALJ's RFC finding was flawed as she failed to adequately weigh the opinion of physiological consultative examiner Dr. Russell Thye pursuant to 20 C.F.R. § 404.1520c. [6] [7] (Doc. No. 11 at 11.)

In assessing a claimant's RFC, the ALJ also must address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). Under the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

---

[6] Plaintiff describes her arguments as both "substantial evidence" and "legal error" arguments. (*See* Doc. No. 13 (arguing "the ALJ has created an RFC that is not supported by substantial evidence" and "[t]hese also constitute legal errors").)

[7] Plaintiff's briefing also references a second argument, that the ALJ failed to adequately weigh Plaintiff's testimony pursuant to Social Security Ruling ("SSR") 16-3p. (Doc. No. 11 at 11.) However, as the Commissioner noted in his Response, this argument is somewhat underdeveloped and oftentimes appears to collapse into Plaintiff's argument regarding Dr. Thye. (Doc. No. 12 at 15.) Accordingly, to the extent this argument is separate from Plaintiff's argument regarding Dr. Thye, the Court declines to address it. *See Bell v. Colvin*, 645 F. App'x 608, 613 (10th Cir. 2016) (declining to substantively address "underdeveloped and conclusory" objections to an ALJ's decision).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

In this case, the ALJ determined Dr. Thye's conclusions were unpersuasive, in part, because they were "unsupported by the results of the one-time consultative psychological evaluation." (AR 116); *see Crystal R. E. v. Kijakazi*, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (saying supportability is "something internal to the medical source" because it examines "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)" (quoting 20 C.F.R. § 404.1520c(c)(1))). In coming to this conclusion, the ALJ determined the limitations found by Dr. Thye did not align with the results of testing he performed. The ALJ noted Plaintiff "recalled two out of five words both immediately and after five minutes; correctly answered three out of five questions testing her general fund of information; and, despite having four errors on serial 7s testing and two

9

errors on serial 3s testing, was able to spell the word 'world' correctly both forward and backward," but decided "[t]hese objective findings do not support a finding of the claimant having marked mental functioning limitations." (AR 116)

After review, the Court concludes the ALJ improperly set aside Dr. Thye's interpretation of the cognitive test results in favor of her own lay interpretation when analyzing the opinion. Dr. Thye drew on medical expertise to find the cognitive test results support "moderate to marked impairment" in Plaintiff's ability to maintain attention to and persist in simple work-related tasks and ability "to understand, recall and remember tasks." (AR 730.) Despite not having the same medical expertise, the ALJ interpreted those very same test results, differently. The ALJ found the test results supported less severe limitations than those found by Dr. Thye. The ALJ did not rely on different evidence, or explain why she was setting aside Dr. Thye's interpretation. Instead, she stepped into the shoes of a medical expert and swapped in her own interpretation. This is impermissible. *See Winfrey,* 92 F.3d at 1022–23; *Shanks v. Saul*, No. 1:20-cv-00314-RBJ, 2021 WL 423437 (D. Colo. Feb. 8, 2021), (reversing decision where "[i]n essence, the ALJ swapped out the informed expert opinion of these physicians for her own interpretation of raw medical data related to claimant's mental state"); *T.M.R. v. Kijakazi*, 2022 WL 2600230, at *5 (D. Colo. July 8, 2022) (reversing a decision where the ALJ's "determination that the doctor's records 'are not supportive of a severe mental health impairment' was based on her own interpretation of the medical data").

To be sure, an ALJ *is* required to undertake the challenging job of weighing conflicting evidence and assessing the extent to which objective medical evidence supports the opinions of medical professionals. *See* 20 C.F.R. § 404.1520c(c)(1); (*see also* Doc. No. 12 at 11). However,

10

in so doing, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factor[ ] of ... supportability. *J.T.L. v. Kijakazi*, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023)  (internal quotation omitted); *see also Andersen v. Astrue*, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (holding that an ALJ "is required to 'give good reasons in the . . . decision for the weight assigned to'" a physician's opinion, which "reasons must be specific and legitimate") (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003)). An ALJ who disagrees with a medical expert's interpretation of test results, and thus finds their opinion unsupported, must at least provide some traceable explanation for her view, such that the reviewing court can understand *why* the ALJ found the opinion unsupported. *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). (stating that an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute her own medical judgment for that of mental health professionals). Here, however, the ALJ did not provide an explanation for her differing view of the cognitive test results. She simply found that Dr. Thye's interpretation of the results was wrong, without providing any backing for the conclusion.[8] [9] (AR 116 ("These objective findings do not support a finding of the

---

[8] The Court notes the ALJ's decision *does* include that Petitioner presented for the exam "as on time and cooperative with a good attitude; had appropriate grooming, hygiene, and dress; served as her own informant and appeared reliable; did not require redirection; and had eye contact and behavior within normal limits." (AR 116.) However, this is, at most, only tangentially relates to the cognitive testing results and is not a sufficient explanation for the ALJ's decision to set aside Dr. Thye's interpretation of the results.

[9] Moreover, the Court notes the ALJ only mentioned certain test results, omitting others. For example, the ALJ's decision does not mention Plaintiff "misidentified what direction the sun rises and sets, and the location of Brazil," that Plaintiff took 98 seconds to list the months of the year in reverse, or how *long* it took Plaintiff to complete the serial 3s and 7s testing. Further, the decision does not mention notes made by Dr. Thye regarding the cognitive testing, including that

claimant having marked mental functioning limitations.")). *Cf. Holgersen v. Commissioner, Social Security Administration*, 2021 WL 2910655, at *9 (D. Colo. July 12, 2021) ("[T]he ALJ's interpretation of the results of one mathematical test administered by Dr. Madsen is problematic. It looks to be a substitution of the ALJ's lay assessment of test results for Dr. Madsen's medical assessment. But putting that aside, the Decision fails to explain how the ability to count to 40 by threes in less than 30 seconds is inconsistent with Dr. Madsen's opinion that Mr. Holgersen had moderate to marked limitations in his ability to carry out complex tasks."); *see also Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir.1997) ("an ALJ cannot arbitrarily substitute his own judgment for competent medical evidence."); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."). As such, the ALJ committed reversible error requiring remand.[10] *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) ("There are specific rules of law that must be followed in weighing particular types of evidence in disability cases. Failure to follow these rules constitutes reversible error." (internal citation omitted)). On remand, the Commissioner should reconsider the analysis of Dr. Thye's opinion, and its impact on Plaintiff's RFC.

## CONCLUSION

For the foregoing reasons, it is

---

Plaintiff "was having difficulty staying engaged and awake" and appeared to "startle awake two or three times." (AR 728–29.)

[10] Plaintiff also brings a secondary, consistency-based argument in support of her contention the ALJ improperly considered Dr. Thye's opinion. However, in light of the Court finding the ALJ's determination was flawed on supportability grounds, the Court declines to address this separate basis for Plaintiff's appeal.

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Dated this 18th day of September, 2024.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge